IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal No.: 1:16CR209 |
| | : | Judge O'Grady |
| LELIS TREMINIO-TOBAR | : | |
| | : | |
| Defendant. | : | |
| | : | |

MOTION TO SUPPRESS EVIDENCE

COMES NOW LELIS TREMINIO-TOBAR, Defendant in the above-styled case, by and through Counsel, and hereby moves this Court to suppress any statements Mr. Tremnio-Tobar provided to law enforcement, whether oral or written, as they were obtained in violation of Mr. Tremnio-Tobar's constitutional rights against self incrimination.

I.   FACTUAL BACKGROUND

On information and belief, Mr. Treminio-Tobar was arrested in the early morning hours of December 15, 2016 and brought to the Washington Field Office in the custody of the Federal Bureau of Investigation. On information and belief, Mr. Treminio-Tobar was brought to the WFO to be interrogated about his alleged involvement in the murder of Carlos Otero-Henriquez.

According to the lone FBI report on the interrogation, Mr. Treminio-Tobar's interrogation began at 7:50am and ended exactly 3 hours later at 10:50am. For reasons

that are not at all clear, the names of the agents who interrogated Mr. Treminio-Tobar have been redacted from the FBI report on interrogation.

There is a video recording of Mr. Treminio-Tobar's interrogation which shows Mr. Treminio-Tobar and the unnamed and unidentified agents in an animated discussion about whether Mr. Treminio-Tobar, presumably about whether he would waive his constitutional rights and submit to an interrogation about his alleged involvement in the murder of Carlos Otero-Henriquez.

After some discussion, the video shows the agents presenting Mr. Treminio-Tobar with a document for his signature- presumably a FD-395.15 consent form.  The video then shows Mr. Treminio-Tobar shaking his head "No" and pushing the form back across the table to the agents without signing it.

Disregarding Mr. Treminio-Tobar's express desire to terminate the interview and to exercise his right to remain silent, the agents redoubled their efforts. Ultimately, after more pressure from the agents, Mr. Treminio-Tobar gave in, signed the form and submitted to questioning.

II.    ARGUMENT

The Fifth Amendment to the United States Constitution provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This privilege against self-incrimination is not limited to statements made during criminal court proceedings; rather, it attaches whenever a person is in custody

and subject to interrogation. In such situations, an individual must be advised of his rights against self-incrimination before any statements "made during custodial interrogation could be admitted in evidence." *Miranda v. Arizona*, 384 U.S. 436, 467, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Dickerson v. United States*, 530 U.S. 428, 431–32 (2000).

Custodial interrogation "mean[s] questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda* at 444, 86 S.Ct. 1602. *See also Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (A person is "interrogated" for *Miranda* purposes not only when police expressly question him, but also when the police use any words or actions (other than those normally attendant to arrest and custody) that they should know are reasonably likely to elicit an incriminating response.)

Statements obtained from a defendant during a custodial interrogation are presumed to have been compelled in violation of the Fifth Amendment, and may not be admitted into evidence, unless the government shows that law enforcement officers adequately informed the defendant of his *Miranda* rights and obtained a constitutionally valid waiver of those rights. *United States v. Day*, 591 F.3d 679, 696 (4th Cir. 2010); *United States v. Cardwell*, 433 F.3d 378, 388–89 (4th Cir.2005).

A. <u>Mr. Treminio-Tobar was in custody</u>

To determine whether a defendant was in custody for purposes of *Miranda*, courts are to determine "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) (footnote omitted). The test is an objective one and a suspect's *subjective* views are not directly relevant to whether he or she was in custody. Nevertheless, a suspect's subjective views may be considered as circumstantial evidence of "the atmosphere and how that would impact a reasonable person's perception" of the questioning. *See e.g. United States v. Ambrose*, 668 F.3d 943, 959 (7th Cir.2012).

In this case, Mr. Treminio-Tobar was in the custody of FBI agents, handcuffed and in an interrogation room at the WFO. There is no dispute that Mr. Tremnio-Tobar was in custody for purposes of *Miranda*.

B. <u>Mr. Treminio-Tobar was interrogated</u>

A person is "interrogated" for *Miranda* purposes not only when police expressly question him, but also when the police use any words or actions (other than those normally attendant to arrest and custody) that they should know are reasonably likely to elicit an incriminating response. *United States v Blake*, 571 F.3d 331, 338 (4th Cir. 2009) (citing *Innis*, 446 U.S. at 301).

As noted above, Mr. Treminio-Tobar was brought to the WFO by FBI agents in

handcuffs and questioned for three hours about his alleged involvement in the murder of Carlos Otero-Henriquez. There is no argument that Mr. Treminio-Tobar was interrogated for purposes of *Miranda*.

    C.    <u>Mr. Treminio-Tobar's confession was coerced, invalid and therefore inadmissable</u>

It is a fundamental principle of our justice system that "men are not to be exploited for the information necessary to condemn them before the law[.]" *Culombe v. Connecticut*, 367 U.S. 568 (1961). Where an accused's "will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." *Id.* At 602

When determining the voluntariness of a statement, courts must be cognizant that "[t]here is torture of mind as well as of body; the will is as much affected by fear as by force." *Watts v. Indiana*, 338 U.S. 49, 52, 93 L. Ed. 1801, 1805 (1949).  To be voluntary, therefore, a confession must have been "the product of an essentially free and unconstrained choice by its maker." *Culombe a*t 602.  The burden, therefore, is always on the government to establish that a confession was voluntarily made. *Haynes v. Washington*, 373 U.S. 503, 10 L.Ed.2d 513 (1963).

Though the agents may have advised Mr. Treminio-Tobar of his rights against self-incrimination, the government bears a heavy burden in establishing that Mr. Treminio-Tobar knowingly, intelligently, and voluntarily waived of those rights. *Maryland v. Shatzer*, 559 U.S. 98 (2010); *North Carolina v. Butler*, 441 U.S. 369, 373

(1979); *Miranda*, 384 U.S. at 475. For his waiver to have been valid, therefore, the government must show that it was both voluntary, in the sense that it was a free choice, and intelligently made with the full awareness of the nature of the rights being abandoned and the consequences of the decision to abandon them. *Moran v. Burbine*, 475 U.S. 412 (1986).

Moreover, when these rights are asserted, the interrogation must stop and can continue only if reinitiated by the suspect. *See Shatzer supra*; *Edwards v. Arizona*, 451 U.S. 477, 484-485, 68 L.Ed.2d 378, 386 (1981). If police re-initiate the interrogation, the statement is presumed involuntary. *McNeil v. Wisconsin*, 501 U.S. 171, 177, 115 L.Ed.2d 158, 167-168 (1991). Therefore, in situations such as these, the court is to "indulge every reasonable presumption <u>against</u> waiver." *Johnson v. Zerbst*, 304 U.S. 458, 464, 82 L.Ed. 1461, 1466 (1938).

In this case, the video shows Mr. Treminio-Tobar asserting his right to remain silent by shaking his head "No" and returning the unsigned waiver of rights form to the agents, thereby terminating the interrogation. The agents, however, did not terminate the interrogation as required but rather re-initiated it. Any statements the agents attribute to Mr. Treminio-Tobar, therefore, are presumed to be involuntary.

In considering whether the government can nevertheless overcome the presumption that Mr. Treminio-Tobar's alleged statements were involuntary (it can't), the Court must look to Mr. Treminio-Tobar's age, experience, education, background, intelligence, capacity to understand the warnings, and capacity to understand the

consequences of waiving rights. *Fare v. Michael C.*, 442 U.S. 707 (1979).  *See e.g. Reck v. Pate*, 367 U.S. 433, 435 (1961) (age); *Lynumm v. Illinois*, 372 U.S. 528, 534 (1963) (threats); *Lynumm*, 372 U.S. at 534, *Spano v. New York*, 360 U.S. 315, 321 (1959) (experience with law enforcement); *Payne v. Arkansas*, 356 U.S. 560, 562 n.4 (1958) (lack of education and intelligence); *Blackburn v. Alabama*, 361 U.S. 199, 207-208 (1960)(composition of the confession by the police).

Mr. Tremnio-Tobar is only a teenager; has no experience with the criminal justice system; has little to no formal education; was raised in a horrific environment in El Salvador; has below average intelligence; and has neither the capacity to understand the *Miranda* warnings nor the capacity to understand the consequences of waiving his constitutional rights. All of these factors cut against any argument by the government that- despite the information set forth above- Mr. Treminio-Tobar voluntarily agreed to waive his rights and to speak with the FBI about his alleged involvement in a kidnapping and murder.

## CONCLUSION

For the reasons set forth above, Mr. Treminio-Tobar moves this Court to grant the instant Motion[1] and for any other relief deemed just

                                                   Respectfully Submitted,

                                                   LELIS TREMINIO-TOBAR
                                                   By Counsel

---

[1] The Court may wish to consider setting any hearing on this Motion on a date other than December 15, the scheduled hearing date for non-evidentiary motions.

_____/s/_____
CHRISTOPHER AMOLSCH
VSB #43800
12005 Sunrise Valley Drive
Suite 200
Reston, Virginia 20191
703.969.2214 (Phone)
703.774.1201 (Fax)
chrisamolsch@yahoo.com (email)
Counsel for Mr. Treminio-Tobar


_____/s/_____
Frank Salvato
Virginia Bar No.: 30453
1203 Duke Street
Alexandria, Virginia 22314
(703) 548-5000
(703) 739-0179 (fax)
frank@salvatolaw.com
Counsel for Mr. Treminio-Tobar

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of November, 2017 I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record.

/s/ Christopher Amolsch
CHRISTOPHER AMOLSCH
VSB #43800
12005 Sunrise Valley Drive
Suite 200
Reston, Virginia 20191
703.969.22124 (Phone)
703.774.1201 (Fax)
chrisamolsch@yahoo.com (email)
Counsel for Mr. Treminio-Tobar